Mr. Justice Walker delivered the opinion of the Court. The complainants, as devisees of John Stovall, have brought this suit to recover a negro woman and her children, and for their hire. The clause of the will, under which they claim, is in the following words: “I give to the children of my daughter Fanny Liggin, (to wit), Nancy Liggin, Mary Liggin, Henry Liggin, Quincy Liggin, Louisa Liggin, and Phebe Liggin, one tract of land lying and being in the county of MacMinburg, and State of Virginia, containing two hundred and twenty-six acres, with one negro girl Peggy, and her increase, reserving the said land and negro for the use and support of my daughter Fanny Lig-gin, during her natural life, not allowing my said daughter, nor her husband, Obadiah Liggin, to rent, sell nor dispose of said land nor negro, only for her use to raise and maintain her children, and at the death of my daughter Fanny Liggin, the above land and negro and her increase, to be equally divided amongst the above children.” This will was made on the 20th of June, 1820, and was duly proven and admitted to record in Granville county, North Carolina, a duly authenticated copy of which is filed as an exhibit in this suit. The validity of the will, its legal sufficiency to convey an absolute estate in the slaves to the complainants, that the slave Peggy mentioned in the will is the same slave in the possession of the defendant, that the other slaves mentioned are her children, and that the complainants are the devisees and the heirs and representatives of such devisees, are facts fully established, and enti-tie the complainants to a decree, unless defeated by the defence set up by the defendant in his answer; which is, in substance, that the uninterrupted possession of Obadiah Liggin for more than five years before the death of the testator, by force of the statute of Virginia, vested in said Liggin an absolute title to the slave Peggy, and that consequently the testator, at the time of his death, when the will took effect, had in truth no title to the slave, and could and did in fact convey none by will to the complainants: but that such title, being so vested in said Liggin, after his death, the same was sold by his legal representatives and passed by successive conveyances to the defendant. It will at once be perceived that this is an affirmative matter, adverse to the title asserted by complainants, the proof which devolved upon the defendant. In order to sustain which, he must prove the statute of Virginia, which declares that five years peaceable, uninterrupted possession of a chattel is sufficient to vest in the holder an absolute title to the property: 2d, more than five years uninterrupted possesssion by Liggin: and 3d, Liggin’s death and a chain of title from his legal representatives to defendant. It is true, as the counsel for the defendant contend, that proof by them of a delivery of the slave by Stovall to Liggin, and that the slave was still found in his possession some ten or twelve years after, at the time of his death, is prima facie evidence of such continued uninterrupted possession, which, in the absence of other evidence to repel such presumption, might be sufficient to sustain the issue on his part. But then it certainly does not require the certainty of proof which counsel seem to suppose, where presumption is met by counter presumption, so as to render it doubtful whether such uninterrupted possession for five years did exist. The defendant, who holds the affirmative and whose title depends upon establishing the fact, must supply the evidence of it or fail. With these remarks, as to the nature of the issue and amount of proof required, we will look for a moment to the evidence. The same witness, upon whose testimony the defendant relies to establish a delivery of the slave and possession of Liggin at bis death, stated also that the negro was brought home to Sto-vall’s every Christmas during Stovall’s life, and thereafter sent back by Stovall to Liggin’s. That he did not see her at Stovall’s every Christmas, but saw her sometimes going there and sometimes Stovall carried her to his house and brought her back. According to the statement of this witness, she was reclaimed at the end of every year, unless his after statements should be understood as qualifying his first statement. When he says that he saw her sometimes going, and sometimes Stovall carried her and returned with her, shall we understand him that these were the only .times he saw her, or that she was returned? In looking to the question and the answers, it is more probable that his answer related to the place where seen, and not to the number of times seen. The question was, “Did you or did you not see Peggy every Christmas at Mr. Stovall’s?” To which the witness answered, “I don’t think I seed her every Christmas. I saw her sometimes coming there, and sometimes Mr. Stovall bringing her and carrying her back.” The substance of the question was, Did you see the girl .every Christmas at a particular place: the answer, to have been precisely responsive, should have been, “I did not see her every Christmas at Stovall’s.” Now this answer would not contradict his former statement, that the girl was returned every Christmas to Stovall’s: nor does it follow from his answer, that he did not see her frequently at Stovall’s on Christmas, but simply that he did not see her there ever}' Christmas; but then the witness goes on to state that he saw her sometimes coming to Stovall’s, and sometimes Stovall himself was bringing her there or returning from there, and this is not inconsistent with, but explanatory of his former statement, that she was returned every Christmas to Stovall’s during his life. In this way, the whole statement of the witness may be reconciled and made to stand. And it is a well established rule that, in construing evidence, it shall be so construed as to reconcile apparent inconsistencies, if the language used will admit of it, so as to give ■credit and effect to the whole statement of the witness. Under this rule, we find nothing in the two statements, which may not be reconciled. The returning the slave was intended to be used as evidence of possession in Stovall, adverse to that of Liggin. The witness had stated that the slave “was brought home to Sto-vall’s every Christmas, during Stovall’s life.” He was then, upon further interrogatory, asked if he had seen the slave at Stovall’s every Christmas; which, in view of the previous answer of the witness, must be taken as an inquiry as to his means of information, touching the fact previously stated, and was in effect this: you say the slave was brought to Stovall’s every Christmas until Stovall’s death; how do you know this, did you see her at Sto-vall’s every Christmas? To which the witness, in effect; answered, “I do not think I saw her at Stovall’s house every Christmas; I saw her there sometimes, and at others I saw her going, there either alone or in company with Stovall, on her way or returning from there, and it is from these facts that-1 stated that she was there every Christmas.” The other, witness stated-that, at Christmas, Stovall brought:. Peggy home, he had seen Stovall himself bringing her home as-often as three times, and he sometimes sent a negro fellow after her. Both witnesses state that she did not return home on a-> visit, but was brought home by Stovall to assert his ownership over her, and that he did openly and positively assert such ownership, and the reasons for his doing so were, also avowed. He had given the girl to his daughter on her marriage, and had af-terwards bought her in when sold to pay Liggin’s debts. Liggin is shown to have been dissipated' and prodigal, which furnished a strong,motive to place the property out of his reach or that of his creditors, and in vigilantly following up the.property and reclaiming it annually, he was in all-probability stimulated-by the prevailing opinion, as shown from the evidence, that a year and a day’s adverse possession would defeat his title to the property, and place it at the mercy of. Liggin’s creditors, or of his indiscretion and prodigality. These considerations render it quite probable that he did annually reclaim the slave. Viewing the evidence, therefore, in the most favorable light for the defendant,, we are satisfied, that his possession was not of that peaceable and uninterrupted character contemplated by the Virginia statute, to vest in Liggin a title to the slave, and if not in Liggin, then, of course, in no one who claims under him, even admitting the evidence of successive ownership and title to be clear from Liggin’s adr. to the defendant, which we are not satisfied is the case, but it is wholly unnecessary to examine the evidence further, as in no event could the defence prevail, unless Liggin acquired title by possession, which we have seen is not the case. Finding no error in the decree of the circuit court, the same is in all things affirmed.